## ABRAM J. FIERO *vs.* JOSHUA FIERO, Jr. *et al.* executors, &c.

A parol agreement, by the owner of land, to employ another to dispose of the same for him, and to pay him a compensation, the measure of which is dependent on the price obtained, is valid and binding.

Where such a contract is executed and carried into effect by the person so employed, a purchaser having been found, the deed executed and delivered, and the consideration money paid to the grantor, and the latter has paid the agent some money on account of his services, it is not a case of a contract void by the statute of frauds, as being a parol contract relating to land.   It is not a sale of an interest in lands, in any sense.

In an action upon such a contract, brought by the agent, to recover his compensation, evidence to show that the plaintiff was subjected to expenses, in negotiating the sale, by employing another person to aid in conducting the negotiations, and paying him therefor, is competent, as being a part of the *res gestæ.*

Fiero *v.* Fiero.

THIS is an appeal from a judgment rendered upon the report of a referee.

Joshua Fiero died May 14, 1864, having duly made a will, wherein he appointed the defendants executors thereof, and said will was admitted to probate, and letters testamentary were issued to such executors, and thereafter the plaintiff presented a claim to the appellants, as such executors, which was rejected by them, and the same was referred, under the statute, to a referee to hear and determine.

The evidence shows that the plaintiff was seised of real estate in the town of Saugerties, being a hotel property, from the year 1855 to August, 1860; that in the month of August, 1860, the plaintiff made a general assignment to Mathew T. Trumpbour, for the benefit of his creditors, whereby this property was conveyed, and that on the 28th day of November, 1860, his assignee conveyed this real estate to Joshua Fiero, the testator, for the sum of $1205; that at the time the plaintiff made his assignment to Trumpbour, the testator had a mortgage on the property; that the purchase price was paid by $377 in cash, and turning in this mortgage for the balance, $828; that after the testator purchased this property of the assignee, and the referee found the time to be about October 1, 1861, he employed the plaintiff to sell the property, and agreed to pay him, for his services in selling, all he could obtain over $1205 for the property, the interest on that sum, and the expense the property had been to him. The testator was eighty-two years old, very deaf, and was the uncle of the plaintiff. The plaintiff sold the property for the testator, under the above mentioned employment and agreement, to Jacob Young, for $1800, being $595 more than the $1205 paid for it by the testator. The testator, in his lifetime, and after the sale, paid to the plaintiff part of the compensation which he was to receive for making the sale. The

plaintiff also rendered services of the value of $5 for the testator, and, at his request, in procuring Jesse F. Bookstaver to come and see him on business, and for the services of the plaintiff in selling the property and procuring Bookstaver to come and see him, the referee found to be due to the plaintiff the sum of $417.46 over and above all payments, which report was confirmed by the court, and judgment was rendered thereon.   The referee, at first, made a general report, and, in pursuance of an order of the court, he made a more specific report, which was confirmed at special term.

The referee found for the plaintiff the difference between $1205, the purchase price, and $1800,

| | | | $595 00 |
|---|---|---|---|
| And found that the plaintiff had received | | | |
| in hay, . . . . . . . . . . . | $ 15 | 00 | |
| In money, . . . . . . . . . . . | 175 | 00 | |
| And also charged him with taxes paid on | | | |
| the property by testator, . . . . . | 19 | 68 | |
| And interest on $1205 from the time of | | | |
| purchase to the time of sale, . . . | 84 | 58 | |
| | | | 294 26 |
| | | | $300 74 |
| The referee found the interest on this amount | | | |
| to be, . . . . . . . . . . . . . . . | | | 111.62 |
| And for horse hire, . . . . . . . . . . | | | 5 00 |
| | | | $417 36 |

The questions raised are discussed in the opinion.

Judgment was entered on the referee's report, and the defendants appealed to the general term.

*A. M. Osborn,* for the defendants, appellants.

*P. Cantine,* for the plaintiff, respondent.

*By the Court,* MILLER, J.  Whether the deceased employed the plaintiff to sell the tavern stand, which he had

purchased, at the time when he made the purchase, or afterwards, was a question of fact presented to the referee upon the trial of this cause; and so long as his conclusion is sustained by sufficient evidence, his finding on that subject cannot. be disturbed. There was certainly some testimony to sustain the finding of the referee, that the agreement, under which the plaintiff claimed a right to recover, was made about the 1st of October, 1861, and there was no positive proof that it was made in connection with, and as a part of, the purchase of the premises by the deceased. As the case stands, there is certainly no such· preponderance of evidence against the referee's finding, in this respect, as to authorize this court to hold that it cannot be sustained. Assuming that there was evidence of a contract between the plaintiff and the deceased, to pay the plaintiff the amount which he claimed to recover on account of the sale which he made, I am inclined to think that the contract was a valid one, and founded upon a good and sufficient consideration. By the contract the plaintiff was employed to sell the property, and was to receive, as a compensation for his services, all beyond a certain amount. It was executed· and carried into effect, the purchaser having been obtained, the deed executed and delivered, and the consideration money paid .to the deceased. The deceased also had paid to the plaintiff some money on account of his services. The circumstances existing did not, I think, present a case of a contract void by the statute of frauds, upon the ground that it was a parol contract relating to land. It was not a sale of an interest in lands, in any sense, but merely a naked agreement, by the deceased, to employ the plaintiff to dispose of certain real estate for him, and to pay him a compensation, the measure of which was dependent upon the price obtained. Such contracts by parol, as I understand, are expressly recognized in the law. An authority for an agent to sell land, may be conferred by parol, and need

not be in writing or under seal. (*Worrall* v. *Munn*, 1 *Seld.* 229, 243.) So, also, an agreement to procure a sale of lands, is not within the statute of frauds. (*Hosford* v. *Carter*, 10 *Abb.* 453.) The right to recover for such services is also fully sustained. In *Barnard* v. *Monnot*, (33 *How. Pr.* 440,) it was held that the duty of the broker consisted in bringing the minds of the vendor and the vendee to an agreement, and he was entitled to his commissions, whether the agreement between the parties had been reduced to writing or not. Here the plaintiff not ·only procured the purchaser, but the deed was executed, and the money actually paid by the purchaser of the premises. The contract was actually consummated and carried into operation.

The cases to which we have been referred for the doctrine that the contract was within the statute of frauds, and void, do not, I think, affect the question now involved. (*See Bander* v. *Snyder*, 5 *Barb.* 63; *Lathrop* v. *Hoyt*, 7 *id.* 59; *Ryan* v. *Dox*, 25 *id.* 440.) In each of these cases the plaintiff claimed under a parol agreement, made upon the sale of real estate, and there was no such contract to sell as was presented upon the trial of the case at bar. They relate to contracts clearly within the statute, and have no application to any other.

I think that the evidence introduced upon the trial to establish that the plaintiff was subjected to expenses in negotiating the sale, was competent. The plaintiff showed that he had employed another party to aid him in conducting the negotiations, and that he agreed to pay, and actually did pay, that party for the services rendered. This testimony was a part of the *res gestæ*, and clearly admissible.

It was also proper to prove that the wife of the plaintiff, and not the plaintiff himself, occupied the tavern stand, and that the plaintiff acted as her agent in conducting the hotel. This fact, if established, would exonerate the

plaintiff from liability for the rent, which was claimed as an offset to his demand.

For the same reason, it was competent to prove that the deceased had signed a lease for the tavern stand, as surety for the plaintiff's wife; and the loss of the lease was, I think, sufficiently established to warrant the introduction of parol evidence of its contents. But if any error was committed in allowing the introduction of proof that the plaintiff acted as the agent of his wife, I think it was not material, and could have done no injury to the defendants. According to the contract, as found by the referee, the plaintiff was not bound to pay the rent, being liable only for the interest on the money paid by the deceased. It is also very manifest, I think, that the deceased did not intend that the plaintiff should pay him, as rent, any amount beyond the interest of the money he had paid for the tavern stand.

I think the referee properly allowed interest on the amount found due, between the date of the two reports, being about one month's interest. He made the last report by the order of the court, and I do not discover that he acted without authority in the allowance of interest. He still retained control over the case, and was not divested of his power because he had made a report. But if he had erred in that particular, the amount could be very easily deducted from the judgment, and it would furnish no sufficient reason for its reversal.

An examination of the case has satisfied my mind that it was rightly disposed of by the referee; and as no error was committed, I think the judgment entered upon his report should be affirmed, with costs of the appeal.

[ALBANY GENERAL TERM, December 2, 1867. *Peckham, Miller* and *Ingalls*, Justices.]